I cannot give my assent to the legal proposition embraced in the charge of the judge upon the trial of this action; I think it at variance with sound reason, and the just and humane principles of the common law. The killing by violence was clearly made out by the proof, and the defence was insanity. The judge, in the charge, treated the condition of the prisoner's mind as a thing separate from the act which constituted the crime, and the delusion or defect of reason under which it was alleged the act was committed to be affirmatively established by the prisoner, like those defences in civil actions which admit the cause of action, but insist it has been determined by some subsequent matter; that until the homicide is made out to the satisfaction of the jury the burden of proof is upon the people, and if there is any doubt the prisoner is to have the benefit of it; but whenever the killing is proved or admitted, and the question of sanity arises, the issue and the burden, as well as the party to be benefited by the existence of a reasonable doubt, are changed. If the principal question, and indeed the only question litigated, is involved in so much uncertainty that the jury were unable to say whether the prisoner was sane or insane, whether in fact he was a responsible creature or one without reason, their duty was to convict and not to acquit. This is the theory of the charge. It is very technical and artistic, and strictly applicable to defences in civil actions upon matter arising subsequent or separate from the cause of action, but not to crimes which consist of *Page 65 
acts coupled with intentions animating minds capable of reason and reflection, and of comprehending the distinction between right and wrong. So that there may be no misapprehension, I quote from the charge as I find it in the bill of exceptions. "The fact of killing," said the judge, "is admitted; that the act was done by the prisoner is not disputed; thus the issue is really reversed from the usual one. The question of insanity is matter of positive defence, and it is a defence to be affirmatively proved; a failure to prove it is (like the failure to prove any other fact) the misfortune of the party attempting to make the proof; and in this case, as in all other cases of fact, you are not to presume what has not been proved, under the distinctions and upon the principles already given you. The act being plainly committed, and that the prisoner did it being undoubted, and the defence set up on his part that he was insane, the burden of proof is shifted. In the proof of the deed itself, if any reasonable doubt be left on your minds, the prisoner is to be acquitted; but, as sanity is the natural state, there is no presumption of insanity, and the defence must be proved beyond a reasonable doubt. If (canvassing the whole evidence on the legal principle laid down in the charge) the prisoner has satisfied you so far beyond a reasonable doubt, that you find that he was at the time of the killing so far really insane as not to be responsible (under the distinctions stated to you) for this particular act you acquit; otherwise you cannot."
It certainly is true that sanity is the normal condition of the human mind, and in dealing with acts, criminal or otherwise, there can be no presumption of insanity. But it is not true, I think, upon the traverse of an indictment for murder, when the defence of insanity is interposed and the homicide admitted, that the issue is reversed and the burden shifted. The burden is still the same, and it still remains with the prosecution to show the existence of those requisites or elements which constitute the crime; and of *Page 66 
these the intention or malus animus of the prisoner is the principal. The doctrine of the charge proceeds upon the idea that the homicide is, per se, criminal; that the mere destruction of human life by the act of another is, without any other circumstance, murder, or some of the degrees of manslaughter. "The fact of killing," says the judge, "is admitted; that the act was done by the prisoner is not disputed; thus the issue is really reversed from the usual one." It is doubtless true that, when the killing by the prisoner is established by proof, the law presumes malice, and a sufficient understanding and will to do the act. The malicious purpose, the depravity of heart, the sufficient understanding and will must, however, actually exist. They are each of them as much of the essence of the crime as the act of killing. The rule which presumes their existence is a rule of evidence, and nothing else, and when the law presumes their existence it recognizes and demands their presence as essential to constitute the crime. The jury must conscientiously believe they exist, or else they cannot convict. The killing of a human being by another is not necessarily murder or manslaughter. It may be either excusable or justifiable. It may have been effected under either of those conditions referred to by the elementary writers, in which the will does not join with the act, and then it is not criminal.
We must be careful to distinguish between what constitutes proof, including those presumptions which the law regards as equivalent to proof in a criminal case, and what we understand by the burden of proof. By the onus probandi, I understand, is meant the obligation imposed upon a party who alleges the existence of a fact or thing, necessary in the prosecution or defence of an action, to establish it by proof. It may be proved by the production of evidence in the usual way; or the law, under certain circumstances, in certain cases may presume its existence without proof. But it is nevertheless a part of the case of the party who alleges its existence, and to be made out beyond any reasonable *Page 67 
doubt. Whenever it may be presumed to exist, in the absence of proof, the presumption may be repelled and overcome by evidence; and whenever the repelling proof leaves the fact to be established in doubt and uncertainty, the party making the allegation is to suffer, and not his adversary. Sound memory and discretion at the time of killing is oftentimes the only material question upon the trial of an indictment for murder. They are essential elements of the crime, to be established upon the trial as a part of the case of the prosecution. A vicious will, without a vicious act, says BLACKSTONE (4 Bl. Com., 21), is no civil crime. So, on the other side, an unwarrantable act, without a vicious will, is no crime at all; so that, to constitute a crime against human laws, there must be, first, a vicious will, and secondly, an unlawful act, consequent upon such vicious will. If there be a doubt about the act of killing, all will concede that the prisoner is entitled to the benefit of it; and if there be any doubt about the will, the faculty of the prisoner to discern between right and wrong, why should he be deprived of the benefit of it, when both the act and the will are necessary to make out the crime? The same writer also remarks that where there is a defect of understanding, the will does not join with the act; for where there is no discernment there is no choice, and where there is no choice there can be no act of the will, which is nothing else but a determination of one's choice to do, or abstain from, a particular action. He, therefore, that has no understanding can have no will to guide his conduct. I am not controverting the legal presumption in favor of sanity until the contrary appears. I am not dealing with legal presumptions of any kind. I am treating of doubts and uncertainties touching guilt or innocence, which arise upon the trial of most capital offences, and of the obligations which the law imposes, and which reason and humanity demand, that such doubts and uncertainties shall be removed before there can be a conviction and a consequent deprivation of life. *Page 68 
It is worth while now to turn to the definition of the crime at common law, as given by the old writers, in order to see of what it consists. The statute has introduced some slight modifications, but for all the purposes of the present inquiry the definition remains the same. It is thus defined by Sir EDWARD COKE (3 Inst., 47): "When a person of sound memory and discrimination unlawfully killeth any reasonable creature in being, and under the king's peace, with malice, aforethought, express or implied." It is to be remarked that every member of this sentence is of the weightiest import in determining the constituents of the crime. The killing must have been effected by a person of sound memory and discretion. It must have been unlawful killing; that which is deprived of life must have been a reasonable creature in being, under the king's peace, and the killing must have proceeded from malice, expressly proved or such as the law will imply, which is not so properly spite or malevolence to the deceased as any evil design in general; the dictate of "a wicked, depraved and malignant heart." Every one of these things must have existed, in order to make out the crime, and they must be proved or presumed upon the trial to have existed, or the prisoner is to be acquitted. They are primarily a part of the case for the prosecution, to be established to the satisfaction of the jury beyond any reasonable doubt. The law presumes malice from the mere act of killing, because the natural and probable consequences of any deliberate act are presumed to have been intended by the author. But if the proof leaves it in doubt whether the act was intentional or accidental, if the scales are so equally balanced that the jury cannot safely determine the question, shall not the prisoner have the benefit of the doubt? And if he is entitled to the benefit of the doubt in regard to the malicious intent, shall he not be entitled to the same benefit upon the question of his sanity, his understanding? For, if he was without reason and understanding at the time, the act was not his, and he *Page 69 
is no more responsible for it than he would be for the act of another man. The cases which have arisen under the license laws, and the English game laws, and when the doubt has been upon the existence of the license or the necessary qualifications, are not analogous to the present; because the necessary qualifications and the license upon which the defendant relied for a defence are entirely separate from and independent of the acts which constituted the offence. In the Commonwealth v. York (1Boston L.R., 510), the question in dispute was provocation or mutual combat; the Supreme Court of Massachusetts held that "if the case or the evidence should be in equilibrio, the presumption of innocence will turn the scale in favor of the accused. But if the evidence does not leave the case equally balanced, then it is to be decided according to its preponderance." In the case of Commonwealth v. Rogers (7Metc., 500), the defence was insanity; and it was held that, being in the nature of a confession and avoidance, it must be shown beyond a reasonable doubt, to entitle the jury to acquit the accused. These two cases are irreconcilable in principle, and the reason given for the latter is utterly unsound; for the defence of insanity, so far from confessing the offence and then seeking to avoid it, denies absolutely the existence of sufficient capacity to incur guilt and commit crime. The answer of the judges, as given by TINDAL, Ch. J., in McNaughton's case
(47 Eng. Com. L.R., 131), does not by any means dispose of the question under consideration. He says: "The jury ought to be told in all cases that every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary is proved to their satisfaction; and that, to establish a defence on the ground of insanity, it must be clearly proved that at the time of the committing of the act the party was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or, if he did, that he did not know he was doing what was wrong.' *Page 70 
These expressions are not without their value, but they furnish no guide when the question is shrouded in doubt and obscurity. When psychological science shall be able to define with precision the exact line where reason leaves and unreason supervenes, then we shall be better able to say what is to be considered the clear proof of a defect of reason, referred to in this opinion. What was said by HORNBLOWER, Ch. J., in State v. Spencer (1Zabriskie), is not consistent with itself. After asserting that, when there is doubt of the insanity, the jury ought to find against the prisoner, it proceeds to say: "I do not mean to say that the jury are to consider him sane if there is the least shadow of a doubt on that subject, any more than I would say they must acquit a man when there is the least shadow of doubt of his having committed the act. What I mean to say is, that when the evidence of sanity on the one side, and insanity on the other, leaves the scales in equal balance, or so nearly poised that the jury have a reasonable doubt of his insanity, then a man is to be considered sane, and responsible for what he does. But if the probability of his being insane at the time is, from the evidence in the case, very strong, and there is but slight doubt of it, then the jury would have a right, and ought, to say that the evidence of his insanity was good." I find it difficult to reconcile the different parts of this opinion. The result, however, seems to be, that the jury are to be governed by the degree of uncertainty in which the question is left by the proof. Whatever has fallen from these eminent men will doubtless be accepted with the most profound respect; but what they have said would be entitled to greater weight, upon the present occasion, did it distinctly appear that their attention was directed to the circumstance that, notwithstanding the legal presumption, the sanity of the prisoner's mind is, under all the definitions of the crime, to be made out affirmatively upon the trial as a part of the case for the prosecution. I conclude, therefore, that the judge erred in his charge to *Page 71 
the jury. If my brethren see no objection to the form in which this question comes before the court for review, under the provisions of the third section of the act of the 12th of April, 1855, to enlarge the jurisdiction of general sessions of the peace in and for the city and county of New-York (a subject which I have not been able to examine), then the judgment should be reversed and a new trial granted. Whatever may be the event, I have deemed it a fit occasion to discuss the principal question involved in the judge's instructions to the jury, to the end that those who preside at the trial of persons accused of capital offences may know whether the presumption of innocence applies to all, or only some of the facts which constitute the crime.
All the judges concurring.
Judgment reversed and new trial ordered.